# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JOHN GOFORTH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-15-855-STE** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

## I.    PROCEDURAL BACKGROUND

Plaintiff's application for disability insurance benefits was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 12-26). The Appeals Council denied Plaintiff's request for

review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 12, 2012, the application date. (TR. 14). At step two, the ALJ determined that Mr. Goforth had the following severe impairments: osteoarthritis of the left knee by history; right ACL tear without surgical repair by history; obesity; major depressive disorder; learning disorder NOS; bipolar disorder; and attention deficit hyperactivity disorder (ADHD) by self-report. (TR. 14). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 17).

At step four, the ALJ found that Plaintiff had no past relevant work. (TR. 25). The ALJ further found Plaintiff had the residual functional capacity (RFC) to:

> [L]ift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit for about 6 hours during an eight-hour workday and can stand and walk for about 6 hours during an eight-hour workday. The claimant can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can respond appropriately to supervisors, co-workers, and usual work situations, but have no contact with the general public.

(TR. 19).

Based on the finding that Mr. Goforth had no past relevant work, the ALJ proceeded to step five. There, he presented the limitations from the RFC to a vocational expert (VE) to determine whether there were other jobs Plaintiff could perform. (TR. 51). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 51). The ALJ adopted the testimony of the VE and concluded that Mr. Goforth was not disabled based on his ability to perform the identified jobs. (TR. 26).

## III.  ISSUES PRESENTED

On appeal, Plaintiff alleges: (1) a failure to include various mental work-related limitations in the RFC and hypothetical to the VE, (2) a failure to develop the record regarding the use of a cane, and (3) an erroneous credibility analysis.

## IV.  STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V. NO ERROR IN THE EVALUATION OF PLAINTIFF'S MENTAL IMPAIRMENT

### A. The ALJ's Duty in Assessing the Plaintiff's Mental RFC

In assessing an individual's mental impairment, the ALJ must employ a "special technique" which involves rating the degree of functional limitation under four broad functional areas. 20 C.F.R. § 404.1520a(b)-(c). This assessment is documented on a Psychiatric Review Technique (PRT) form and is used to rate the severity of the mental impairment at steps two and three of the sequential evaluation process. *See* Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at 6-7 (July 2, 1996) (SSR 96-8p).

Step four requires a more detailed assessment by itemizing various functions contained in the broad categories which were summarized on the PRT. *Id.* In assessing the RFC, the ALJ must consider the limitations and restrictions imposed by a claimant's severe impairments and express any mental limitations in terms of specific, work-related mental activities he or she is able to perform. *Id.*, at 6-7.

### B. Evidence of Plaintiff's Mental Impairments

On March 20, 2013, non-examining State Agency consultant Dr. Cynthia Kampschaefer reviewed Mr. Goforth's records and completed two reports—the PRT form and the Mental Residual Functional Capacity Assessment (MRFCA). (TR. 72-73, 75-77). In the PRT form, Dr. Kampschaefer concluded that Mr. Goforth was "moderate" impairment in the areas of "activities of daily living," "maintaining social functioning," and "concentration, persistence, or pace." (TR. 72).

In the MRFCA, Dr. Kampschaefer performed a more detailed analysis of the broad findings from the PRT form. The MRFCA is divided into two parts. First, the author is instructed to answer a series of questions "to help determine the individual's ability to perform sustained work activities." (TR. 75). If the individual is limited in a certain area, the author is required to rate the level of limitation. Second, after rating the degree of limitation, the author is instructed to provide a narrative discussion "which describes how the evidence supports each conclusion . . ." (TR. 75). This narrative is considered "[t]he actual mental residual functional capacity assessment[.]" (TR. 75).

First, Dr. Kampschaefer found that Mr. Goforth was "markedly" limited in his ability to understand, remember, and carry out detailed instructions, as well as in his ability to interact appropriately with the general public. (TR. 75-76). In the "narrative" portion of the form, Dr. Kampschaefer stated:

> The claimant is able to remember, understand and carry out simple, routine instructions. He is able to related [sic] to supervisors and co-workers superficially for work related matters. He is not able to interact with the general public.

(TR. 77). The ALJ accorded Dr. Kampschaefer's opinions "great weight." (TR. 22, 23).

### C.  No Error in the RFC Regarding Mental Work-Related Limitations

Mr. Goforth alleges that the ALJ erred in his evaluation of the Plaintiff's mental impairments, including: (1) limitations that Plaintiff believes stem from a "mood disorder" which the ALJ had deemed severe at step two, (2) Dr. Kampschaefer's findings on the PRT form, and (3) Dr. Kampschaefer's opinions of specific work-related limitations as expressed on the MRFCA.

## 1. The Severe Mental Impairment at Step Two

Plaintiff alleges: (1) the ALJ found a severe "mood" disorder at step two, (2) the disorder caused stress and panic attacks, and (3) the RFC and hypothetical to the VE should have reflected specific work-related limitations related to panic attacks. These allegations are without merit.

At step two, the ALJ concluded that Mr. Goforth suffered from severe "major depressive disorder" and "bipolar disorder." (TR. 14). The Court assumes that one of these mental impairments is the "mood disorder" which Plaintiff argues causes stress and panic attacks. According to Mr. Goforth, the RFC limitation to "simple" work does not properly reflect stress and panic attacks, which Plaintiff alleges will cause him to distract other workers. As a result of the allegedly faulty RFC, Plaintiff also claims a lack of substantial evidence to support the step five findings because the hypothetical to the VE failed to include limitations relating to panic attacks.

Once the Plaintiff's mental impairment was deemed severe at step two, the ALJ had to discuss the impact of the impairment throughout the remainder of the disability determination. 20 C.F.R. § 404.1545(a)(2). However, the presence of an impairment, albeit severe, does not necessarily equate to corresponding limitations in the RFC. *Cavalier v. Colvin*, 2014 WL 7408430, at 2 (N.D. Okla. Dec. 30, 2014) (unpublished op.)

As stated, Mr. Goforth alleges that the RFC for "simple" work failed to account for the severe mood disorder, which caused stress and panic attacks which would distract others at work. The Plaintiff may be correct regarding his allegation of "simple" work. But the ALJ made an *additional* finding which encompassed Plaintiff's ability to

work with others. The RFC stated: "The claimant can respond appropriately to supervisors, co-workers, and usual work situations." (TR. 19). This finding, in turn, was based on a conclusion from Dr. Kampschaefer, who had reviewed Plaintiff's records, including a diagnosis of major depressive disorder. (TR. 73, 77). Acknowledging the depression, Dr. Kampschaefer obviously believed that Plaintiff would not overly distract others at work.

Mr. Goforth has not pointed to any evidence that he was being treated for panic attacks or evidence which contradicted Dr. Kampschaefer's conclusions regarding Plaintiff's ability to deal with his potential fellow workers. Mr. Goforth's mere belief that his depression will cause panic attacks which will distract others does not provide a legal basis on which to find error in the RFC. As the record stands, the ALJ properly adopted Dr. Kampschaefer's opinions which accounted for Plaintiff's ability to deal with his co-workers. Accordingly, the Court: (1) rejects Plaintiff's allegations that the RFC failed to include limitations resulting from panic attacks which would cause him to distract co-workers and (2) rejects Plaintiff's allegations regarding step five which were premised on an allegedly faulty RFC.

### 2. Findings on the PRT Form

On the PRT form, Dr. Kampschaefer concluded that Plaintiff was "moderately" impaired in the areas of "activities of daily living," "social functioning," and "concentration, persistence, and pace." (TR. 72). According to Plaintiff, the RFC did not properly reflect these findings. But these findings were opinions expressed on the PRT form, which is "not an RFC assessment, but [is] used to rate the severity of mental

impairments) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, at 4.

Thus, the ALJ had no duty to express these particular findings in the RFC. *See Bales v. Colvin*, 56 Fed. Appx. 792, 798 (10th Cir. Aug. 15, 2014) (unpublished op.) ("[T]he ALJ's finding of a moderate limitation at step three does not necessarily translate to a work-related functional limitation for purposes of the RFC assessment. . . .").

### 3. Specific Work-Related Mental Limitations from Dr. Kampschaefer

In addition to the PRT findings, Dr. Kampschaefer also concluded that Plaintiff suffered from "marked" limitations in his ability to understand, remember, and carry out detailed instructions and interact appropriately with the general public. (TR. 75-76). Dr. Kampschaefer translated these findings into work-related limitations and provided the following mental RFC:

> The claimant is able to remember, understand and carry out simple, routine instructions. He is able to related [sic] to supervisors and co-workers superficially for work related matters. He is not able to interact with the general public.

(TR. 77). The ALJ adopted these findings as reflected in the RFC. (TR. 19).

Plaintiff alleges error because the RFC failed to reflect Dr. Kampschaefer's specific findings that Mr. Goforth suffered from "marked" limitations in his abilities to: (1) understand, remember, and carry out detailed instructions and (2) interact appropriately with the general public. The Court rejects Mr. Goforth's argument.

In *Smith v. Colvin*, ___F.3d ___, No. 15-1224, 2016 WL 2620519 (10th Cir. filed May 9, 2016), the Tenth Circuit Court of Appeals addressed a similar challenge. There,

a consultative physician had completed a form to assess the plaintiff's RFC, and opined that the plaintiff was "moderately limited" in her ability to:

- Maintain concentration, persistence, and pace,

- Remain attentive and keep concentration for extended periods,

- Work with others without getting distracted,

- Complete a normal workday and workweek without interruption for psychologically based symptoms,

- Perform at a consistent pace without excessive rest periods,

- Accept instructions and respond appropriately to criticism by supervisors,

- Get along with coworkers or peers without distracting them or engaging in behavioral extremes,

- Respond appropriately to changes in the workplace, and

- Set realistic goals or independently plan.

*Smith*, slip op. at 7-8. The form explained that the questions, which had yielded these findings, "provided only an aid" to assess the plaintiff's RFC. *Id.*, slip op. at 8, n.1. The form further instructed the psychologist to assess the actual RFC in a narrative. *Id.* In the narrative, the psychologist stated that the plaintiff could: (1) engage in work that was limited in complexity and (2) manage social interactions that were not frequent or prolonged. *Id.*, slip op. at 8. The ALJ's RFC was similar to that authored by the psychologist in the narrative. *Id.*

On appeal, the plaintiff questioned how the ALJ's RFC had incorporated all of the moderate limitations that the psychologist had listed. *Id.*, slip op. at 9, n.2. In response, the Court stated, "this is the wrong question." *Id.* According to the Court, "[The

psychologist's] notations of moderate limitations served *only as an aid* to her assessment of residual functional capacity. We compare the administrative law judge's findings to [the psychologist's] opinion on residual functional capacity, *not* her notations of moderate limitations." *Id.* (emphasis added).

In rejecting the plaintiff's challenge, the Court cited *Lee v. Colvin*, 631 Fed. Appx. 538 (10th Cir. Nov. 12, 2015) (unpublished op.). In *Lee*, the plaintiff asserted a similar challenge, arguing that the ALJ had not expressly incorporated specific moderate limitations into the RFC which had been given by a psychologist which the ALJ had accorded "great weight." *Lee*, 631 Fed. Appx. at 541. The Court rejected the challenge, citing the Social Security Administration's Program Operations Manual Systems (POMS) which stated that "adjudicators are to use the . . . narrative as the RFC assessment" rather than the accompanying worksheet which rated the degree of limitation in particular areas. *Id.* In *Lee*, the ALJ had adopted the "narrative" section of the psychologist's RFC which accounted for the moderate limitations the psychologist had listed, even though the narrative was not a verbatim recitation of the rated limitations. *Id.* at 541-42.

In *Smith*, the Court adopted the approach taken in *Lee* and concluded:

> The administrative law judges in *Lee* and in our case did not repeat the moderate limitations assessed by the doctor. But both administrative law judges incorporated these limitations by stating how the claimant was limited in the ability to perform work-related activities.

*Smith*, slip op. at 10.

*Smith* is controlling in the instant case. Here, Dr. Kampschaefer had rated Plaintiff's degree of limitation in several areas, and found that Mr. Goforth was markedly

limited in his abilities to: (1) understand, remember, and carry out detailed instructions and (2) interact appropriately with the general public. (TR. 75-76). But as in *Smith* and *Lee*, the form that Dr. Kampschaefer completed stated that the narrative discussion, not the specifically rated limitations, was considered the "actual mental residual functional capacity . . . [which] described how the evidence supported each conclusion." (TR. 75). In the narrative, Dr. Kampschaefer translated her specific findings regarding "marked" limitations into the following mental RFC:

> The claimant is able to remember, understand and carry out simple, routine instructions. He is able to related [sic] to supervisors and co-workers superficially for work related matters. He is not able to interact with the general public.

(TR. 77). The ALJ accorded Dr. Kampschaefer's opinion "great weight" and adopted her RFC in the decision, verbatim. (TR. at 19). According to *Smith*, "[t]his approach is acceptable in our circuit." *Smith*, slip op. at 10.

Based on *Smith*, the Court rejects Mr. Goforth's argument that the RFC failed to properly account for the specific "marked" limitations. In turn, the Court also rejects Mr. Goforth's related argument challenging the hypothetical and jobs identified by the VE, as Plaintiff's argument was based on an allegedly faulty RFC which has been disproved.

## VI.    NO ERROR IN DEVELOPMENT OF THE RECORD

At the hearing on January 21, 2014, Mr. Goforth testified that he had previously used a cane for walking, but that approximately "a year and a half" prior to that time, the cane had been destroyed or lost in a car wreck, and he had not replaced it. (TR. 40-41). Mr. Goforth argues "Errantly there was no cane in the RFC . . ." (ECF No. 15:8). According to Plaintiff his need for a cane is "so obviously necessary" that "[i]f the record

11

did not contain a prescription for a cane, the ALJ should have recontacted the physician to determine if there was one." (ECF No. 15:8). Mr. Goforth contends that the ALJ failed to do so, thereby committing legal error in his duty to develop the record. The Court rejects this argument.

## A.    The ALJ's Duty to Develop the Record

It is beyond dispute that the burden to prove disability in a social security case is on the claimant." *Hawkins v. Chater,* 113 F.3d 1162, 1164 (10th Cir. 1997); 20 C.F.R. § 404.1512(a) ("[Y]ou must bring to our attention everything that shows that you are . . . disabled."). Nevertheless, because a social security disability hearing is a nonadversarial proceeding, the ALJ is "responsible in every case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Hawkins,* 113 F.3d at 1164 (internal citation and quotation marks omitted). Generally, this means that the "ALJ has the duty to . . . obtain [ ] pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater,* 73 F.3d 1019, 1022 (10th Cir. 1996).

The ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs.,* 13 F.3d 359, 360–61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater,* 73 F.3d 1019, 1022 (10th Cir. 1996). The duty to recontact medical sources is triggered when the ALJ determines that there is not enough evidence in the record to determine

whether or not a claimant is disabled. *See Greer v. Astrue*, 2009 WL 799275, at 7 (W.D. Okla. Mar. 24, 2009) (unpublished op). If the ALJ finds the evidence to be sufficient, then he is not required to recontact a medical source. *Id.*

### B.    Evidence and Findings Relating to the Cane

At the hearing, Plaintiff testified that a doctor from "Hope" told him he needed to "get a cane to walk with." (TR. 41). In the decision, the ALJ acknowledged the testimony but found that "there [wa]s no medical recommendation for a cane or any evidence that any medical provider prescribed the same." (TR. 20). The ALJ also concluded that there was no evidence of any medical basis for the use of an assistive device and that Mr. Goforth was observed to ambulate without the need of any assistive device. (TR. 20). As a result, the ALJ included no accommodations in the RFC related to the use of a cane.

### C.    No Error in Failing to Develop the Record Regarding the Cane

Mr. Goforth alleges that the RFC should have accounted for the use of a cane and that the ALJ erred in failing to recontact a physician regarding whether the cane had been prescribed. The Court disagrees, as there was insufficient evidence in the record which would have triggered the ALJ's duty in this regard.

As stated, at the hearing, Plaintiff testified that someone "at Hope" told him he "needed to get a cane to walk with." (TR. 41). The only other evidence in the record relating to the cane are "Function Reports" submitted with his application, wherein Mr. Goforth, his girlfriend, and his sister-in-law stated that Plaintiff had been prescribed a cane by a doctor in October 2011. *See* TR. 195, 211, 231. But the records from Hope

Community Services indicated treatment *only* for Mr. Goforth's *mental* impairments, not his physical impairments. *See* TR. 302-319, 325-330. In fact, with the exception of a State Agency consultative examination, the record contains no evidence of treatment for Plaintiff's physical impairments.

Nothing in the record before the Court suggests that the ALJ became aware of any prescription or medical record indicating that the cane had been prescribed. In fact, the record suggests that the "prescription" was nothing more than a "recommendation." *See* TR. 293 (July 31, 2012 notation from consultative physician Justin Bryant, that Plaintiff reported that he had "recently beg[un] using a cane on the recommendation of his PCP for assisting his ambulation.").

In the absence of an actual prescription for a cane or medical records indicating that a cane had been prescribed, the ALJ did not commit legal error by failing to recontact a physician at Hope Community Services regarding whether a physician there had prescribed a cane. As a result, the Court rejects Plaintiff's claim. *See Greer v. Astrue*, 2009 WL 799275, at 7 (W.D. Okla. Mar. 24, 2009) (unpublished op.) (rejecting plaintiff's allegation that ALJ failed to recontact physician when "nothing in the record suggests that additional records from Dr. Abraham existed or needed to be procured for the record."); *see also Huizar v. Astrue*, 2012 WL 3631526, at 3 (C.D. Cal. Aug. 23, 2012) (unpublished op.) (no error in failing to recontact physician regarding allegedly prescribed cane because the only "evidence" in the record regarding the need for a cane was a statement in a "function report" that a doctor had prescribed a cane and

"the record contain[ed] no inadequate or ambiguous evidence from any treating physician concerning a cane.").

## VII. NO ERROR IN THE CREDIBILITY/PAIN ANALYSIS

Finally, Mr. Goforth argues error in the credibility analysis related to his allegations that he suffers from debilitating knee pain. Plaintiff contends the ALJ "did not properly apply any of the well-respected credibility factors and dispensed with proper analysis." (ECF No. 15:11). As a result of the allegedly improper credibility determination, Mr. Goforth argues that the ALJ erroneously concluded that Plaintiff could perform "light work." *See* Tr. 19. The Court rejects Mr. Goforth's claims.[1]

### A. Evidence Regarding Mr. Goforth's Knee Impairment and Pain

At the administrative hearing, Plaintiff testified that he constantly wore a brace on his left knee and that he had used a cane in the past. (TR. 38-39). Plaintiff also stated that he was unable to bend because his left knee might "pop out." (TR. 44). A consultative physician noted that Mr. Goforth complained of:

---

[1]  Intertwined in his challenge to the credibility determination, Plaintiff states "the ALJ was required to discuss the evidence and explain why he found that Mr. Goforth was not disabled at step three." (ECF No. 15:12.). Mr. Goforth then cites Listing 1.05(C) and states that "impairments of the musculoskeletal system, are established through detailed history, physical examinations, x-rays, and the use of specific findings, such as **pain, muscle spasm**, and significant limitation of motion in the spine and **appropriate radicular destruction of significant motor loss with muscle weakness and sensory and reflex loss** [and] Mr. Goforth has all of the symptoms highlighted above." (ECF No. 15:12) (internal quotations marks and citations omitted) (emphasis in original). But aside from noting the Listing and making a bald allegation that he "has all of the symptoms highlighted above," the Plaintiff does not develop the argument by providing evidence that he had met Listing 1.05(C). As a result, the Court will not consider this argument. *See Wall v. Astrue*, 561 F.3d 1048, 1065 (10th Cir. 2009) (refusing to consider plaintiff's contention that her impairments had equaled a listing because she had "failed to support this contention with any developed argumentation.") (internal citation and quotation marks omitted).

- chronic bilateral knee pain,

- left knee swelling, and

- the ability to stand for only 5 minutes before experiencing discomfort.

(TR. 293). The physician also noted that Mr. Goforth was unable to perform toe-and-heel walking due to knee pain, and that he used a cane for ambulation upon entering and exiting the exam. (TR. 293, 294).

### B. Administrative Law Judge's Duty to Evaluate the Subjective Complaints

The ALJ had to consider the evidence and decide whether he believed Mr. Goforth's complaints. *See* Social Security Ruling 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, 1996 WL 374186, Westlaw op. at 1-2 (July 2, 1996). In doing so, the ALJ had a duty to make specific findings and to link them to substantial evidence. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (noting the duty to "closely and affirmatively link[ ]" credibility findings to substantial evidence); Social Security Ruling 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, 1996 WL 374186, Westlaw op. at 4 (July 2, 1996) (noting the duty to provide "specific reasons for the weight given to the individual's statements" "articulated in the determination or decision" in a manner "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight" given "to the individual's statements and the reasons for that weight").

Besides objective evidence, the ALJ may consider certain factors in evaluating a claimant's credibility, including the claimant's daily activities; the location, duration, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; any treatment other than medications the individual receives or has received for pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* SSR 96-7p, at 3; *Keyes-Zachary*, 695 F.3d 1156, 1167 (10th Cir. 2012). However, "an ALJ is not required to address each factor in his decision." *Duncan v. Colvin*, 608 Fed Appx. 566, 578 (10th Cir. 2015).

**C.    No Error in the Evaluation of Mr. Goforth's Knee Impairment/Credibility Analysis**

In assessing Plaintiff's allegations of knee pain, the ALJ summarized the *only* medical evidence in the record related to the impairment. This evidence was derived from the Social Security consultative examination. The ALJ noted that Plaintiff had:

- complained of bilateral knee pain,

- used a cane upon entering and exiting the exam,

- reported working one month prior to the exam doing construction and moving furniture, while wearing a knee brace,

- ambulated with a left legged limp, and

- not been able to perform toe-and-heel walking due to pain.

(TR. 15). The ALJ also reported the physician's findings that Plaintiff suffered from osteoarthritis of the left knee by history and history of right ACL tear without surgical repair. (TR. 15).

In assessing Mr. Goforth's credibility, the ALJ outlined the proper procedure, summarized the Plaintiff's testimony, and made the following statement:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible for the reasons explained in this decision.

(TR. 22).

The judge then explained why he had discounted Mr. Goforth's subjective allegations:

> The claimant's credibility is diminished for several reasons. The clinical findings do not substantially corroborate his subjective complaints. The claimant has sought very little medical treatment; this lack of treatment diminishes the claimant's credibility. The record reflects significant gaps in the claimant's history of treatment. The claimant said he was unable to work because it would mess up his application status for SSI. Mental status examination was within normal limits. He indicated he was good at playing basketball. Although cane usage was noted at the physical consultative examination in July 2012, the claimant was noted to ambulate without a cane and without difficulty at the mental consultative examination in February 2013. The Administrative Law Judge notes that since the claimant's protective filing date, he has sought treatment only on June 22, 2012, on July 16, 2012, on July 24, 2012 (appears to be for medication pick-up only), and on July 23, 2013. There were several no-shows noted in the record.

(TR. 22) (citations omitted). Although the ALJ did not discount the pain allegations citing each credibility factor, he was not required to do so. *See Duncan v. Colvin*, 608 Fed Appx. 566, 578 (10th Cir. 2015) (stating that "an ALJ is not required to address

each [credibility] factor in his decision"). But the ALJ considered the allegations and supported his reasons with proper explanation and links to evidence in the record. First, The ALJ noted that Mr. Goforth had sought very little treatment, which diminished his credibility. Indeed, the record does not show that Mr. Goforth sought *any* treatment for his knee impairment. The only medical evidence relating to the knee impairment was an opinion from a consultative physician following an exam which had been ordered by the agency.

Before an ALJ may rely on the claimant's failure to pursue treatment as support for his determination of noncredibility, the ALJ should consider: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse. *Frey v. Bowen,* 816 F.2d 508, 517 (10th Cir. 1987). But the Tenth Circuit has held that the *Frey* test is not required in situations where treatment has not been prescribed or recommended, but where the ALJ is simply considering "what attempts plaintiff made to relieve [her symptoms] . . . in an effort to evaluate the veracity of plaintiff's contention that [her symptoms were] so severe as to be disabling." *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000).

Here, the ALJ relied on Plaintiff's lack of treatment, gaps in treatment, and "no-shows" as support for his disregarding Mr. Goforth's allegations. (TR. 22). The explanation confirms that the ALJ was merely noting that Mr. Goforth had made very few attempts to relieve his symptoms, suggesting that the knee pain was not as severe as alleged. In support, the ALJ also cited the fact that Mr. Goforth had been employed

moving furniture and doing construction only one month prior to his consultative examination. (TR. 293-94). Under *Qualls*, the ALJ properly relied on Mr. Goforth's lack of treatment as a basis for evaluating his veracity, especially in light of the fact that Mr. Goforth did not attempt to excuse the failure.[2]

The ALJ also relied on Plaintiff's inconsistent use of a cane as a basis to discount the credibility. As the ALJ noted, although Mr. Goforth used a cane during the physical consultative examination, he ambulated "with no evident difficulties" at the mental consultative examination 7 months later. *Compare* TR. at 293 *to* TR. at 320. The ALJ was entitled to rely on Plaintiff's inconsistent use of a cane to discount his allegations of pain. *Morphew v. Colvin*, 2014 WL 1373893, at 12 (D. Kan. Apr. 8, 2014) (unpublished op.) (no error in ALJ's reliance on contradictory information regarding plaintiff's use of a cane as a basis to discount credibility).

Finally, Mr. Goforth challenges the RFC based on an allegedly faulty credibility assessment. According to Plaintiff, his knee impairment "should have caused this ALJ to use limitations such as limited ability to stand for extended periods and the need for extra breaks due to pain or difficulty walking for more than just a few minutes as a time due to very severe knee pain from an unrepaired ACL tear that he noted as a severe impairment at step two." (ECF No. 13-15). But as discussed, the presence of an impairment, albeit severe, does not necessarily equate to corresponding limitations in

---

[2] Mr. Goforth argues that the ALJ should not have cited missed appointments as a basis for discounting the credibility, because the missed appointments were owing to the fact that he was in jail. The excuse may be valid, but it is immaterial to Mr. Goforth's allegations of debilitating knee pain, as the missed appointments were for a review of his depression and insomnia medications and related mental health treatment (TR. 303, 327). The ALJ primarily relied on Plaintiff's lack of treatment overall, which he was entitled to do.

the RFC. *Cavalier v. Colvin*, 2014 WL 7408430, at 2 (N.D. Okla. Dec. 30, 2014) (unpublished op.). The ALJ acknowledged the knee pain, but properly discounted Mr. Goforth's credibility with a detailed explanation which was supported by substantial evidence. The ALJ fulfilled his duty in this regard and was required to do no more. Thus, there was no error in the ALJ's credibility assessment.

**ORDER**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge **AFFIRMS** the Commissioner's decision.

ENTERED on May 17, 2016.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE